Kenneth H. Frenchman (kfrenchman@mckoolsmith.com)
Alexander M. Sugzda (asugzda@mckoolsmith.com)
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036

*Attorneys for Plaintiff Peter Little*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER LITTLE, <br><br> Plaintiff, <br><br> v. <br><br> XL INSURANCE COMPANY SE, <br><br> Defendant. | Civil Action No.: 18-cv-11919 <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Peter Little, by and through his undersigned attorneys, as and for his Complaint against XL Insurance Company SE ("XL"), alleges as follows:

**PRELIMINARY STATEMENT**

1. This action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory judgment arises out of XL's denial of its obligations under a directors and officers legal liability insurance policy to indemnify Mr. Little and pay for his costs of defense and investigation in connection with an enforcement action brought by the Board of Governors of the Federal Reserve System (the "Board of Governors") entitled *In re Little*, Docket Nos. 18-010-E-I and 18-010-CMP-I (the "Enforcement Action").

2. As set forth in the Notice of Intent to Prohibit and Notice of Assessment of a Civil Money Penalty Pursuant to Section 8 of the Federal Deposit Insurance Act, as Amended (the "Notice"), filed by the Board of Governors in the Enforcement Action, Mr.

Little is accused of acting in his position as head of the foreign exchange ("FX") spot trading desk for Barclays Bank PLC ("Barclays") to manipulate FX currency benchmarks, and colluding with others to do so.

3. Mr. Little has maintained his innocence and vigorously defended against these allegations. Mr. Little's position that the allegations are without merit was reinforced recently by the acquittal of his alleged co-conspirators after a jury trial on criminal charges brought against them by the Department of Justice.

4. Barclays purchased an insurance policy from XL specifically to provide protection to those defined as "Insureds" under the policy with respect to claims against them alleging actual or alleged wrongful acts, and to pay for liability and costs incurred in connection with the defense of such claims, including costs incurred in defending administrative or regulatory proceedings and investigations.

5. Despite receiving substantial premiums as consideration for issuing this insurance policy, XL has refused to pay the considerable and mounting costs incurred by Mr. Little to defend against the Enforcement Action. This action therefore seeks damages based upon XL's breach of contract to provide insurance coverage to Mr. Little in connection with the Enforcement Action.

6. This action also seeks damages based upon XL's breach of the policy's implied covenant of good faith and fair dealing in its handling of Mr. Little's claim, during which XL has refused to provide Mr. Little with even a copy of the policy under which he is insured, and maintained its denial of coverage on the basis that Mr. Little is not an "Insured" under the policy, a position flatly contradicted by the definition of "Insured" which Mr. Little has obtained from Barclays.

7. This action also seeks a declaration of the obligations of XL to provide indemnification for costs incurred by Mr. Little in connection with the continuing Enforcement Action.

## THE PARTIES

8. Plaintiff Peter Little is an individual who resides in Purchase, New York. From April 2010 to February 2013, Mr. Little was employed as the Director – FX Spot Trading at Barclays' New York, New York office.

9. Upon information and belief, Defendant XL is an insurance company organized under the laws of England with its principal place of business in London, England. Upon information and belief, XL has conducted and continues to conduct substantial insurance business in the State of New York, including engaging in the business of selling insurance, investigating claims, and/or issuing policies that cover policyholders or activities located in New York.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties to this action and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

**I.     The Insurance Policy at Issue**

12. Barclays purchased directors and officers insurance coverage from XL during one or more years in which Mr. Little worked for Barclays.

13. Mr. Little does not have a copy of the policy. He has made several requests to both XL and Barclays over the past several months for a copy of the policy, but neither XL nor Barclays has provided him with a copy of the policy.

14. Barclays did provide Mr. Little with what it represented were excerpts of the applicable XL policy. Barclays did not provide any identifying information on the policy, such as policy number or policy period. The excerpts consisted of one page of policy definitions, which are themselves redacted.

15. The excerpts Barclays provided to Mr. Little indicate that the applicable XL policy defines "**Insured**" as:

> [A]ny **director or officer**, and shall include any of the following:
>
> (i) any **employee** while acting in a managerial or supervisory capacity in any **company**; . . . .[1]

16. The excerpts Barclays provided to Mr. Little define **company**, in relevant part, to mean "[Barclays PLC] and its subsidiaries."

17. The excerpts Barclays provided to Mr. Little do not include the definition of **employee**, nor do they include the policy's insuring agreement or the definitions of key terms used therein.

18. Counsel for Mr. Little was allowed to review a printed copy of what XL and/or Barclays apparently believe is the applicable policy at the offices of Barclays' counsel on December 5, 2018. Counsel was not permitted to reproduce any part of the policy or take any notes during this review. Counsel's review indicated that Mr. Little's claim for coverage for the defense costs incurred related to the Enforcement Action satisfies the policy's insuring agreement and that no other policy terms or conditions operate to preclude coverage for Mr.

---

[1] All terms in boldface appear in boldface in the excerpts Mr. Little received from Barclays.

Little's claim. However, Mr. Little cannot quote provisions other than the excerpts which have been provided to date and does not believe it is appropriate to paraphrase the other policy provisions from counsel's memory.

19. As of the date of filing this Complaint, XL has refused to provide Mr. Little with a copy of the applicable policy. Mr. Little plans to move this Court at the earliest possible convenience to compel XL to turn over a copy of the policy to Mr. Little.

## II. The Enforcement Action

20. On February 16, 2018, the Board of Governors commenced the Enforcement Action by filing the Notice, which alleges that Mr. Little engaged in unsafe and unsound practices and breached fiduciary duties during his employment at Barclays.

21. The Notice alleges that as head of the G-10 FX Spot Trading Desk at Barclays' New York, New York office from April 2010 to February 2013, Mr. Little participated in electronic chat rooms with FX traders at competitor banks and coordinated trading with those competitors to attempt to influence or manipulate benchmark currency rates.

22. The Notice alleges that Mr. Little coordinated closely in these allegedly illegal activities with the head of Barclays' G-10 spot trading desk in London, identified as "Trader 1" in the Notice.

23. The Notice is also replete with allegations concerning traders that worked for Mr. Little on the FX Spot Trading Desk, who also allegedly sought to influence and/or manipulate benchmark currency rates through participation in chat rooms with competitors, including specifically alleging that Mr. Little failed to adequately supervise traders on the FX Spot Trading Desk.

24. The Notice seeks to permanently ban Mr. Little from the banking industry and to assess a civil money penalty of $487,500 against Mr. Little.

25.     The Notice provides that Mr. Little can contest the allegations in the Notice at a hearing to be conducted by an administrative law judge at the United States Courthouse in the Southern District of New York.

26.     Mr. Little has filed an answer to the Notice vigorously contesting all allegations of wrongdoing, and the hearing to determine any liability for the allegations in the Notice is currently scheduled to take place in New York in late 2019.

27.     Mr. Little has incurred significant costs defending against the Enforcement Action. To date the amount of such costs Mr. Little is responsible for is approximately $1.1 million, and Mr. Little's counsel estimates it could cost more than $5 million to defend against the Enforcement Action through the final hearing.

28.     The individual identified as "Trader 1" in the Notice is Mr. Little's former colleague Christopher Ashton, who was charged, along with two other traders at competitor banks who also participated in these chat rooms, with criminal violation of the Sherman Act by the Department of Justice.

29.     Mr. Ashton and his co-defendants waived extradition and voluntarily appeared for trial in New York, where they too vigorously contested the allegations made against them of attempting to manipulate benchmark currency rates. On October 26, 2018, the jury in that trial acquitted Mr. Ashton and his co-defendants, ending what one of his co-defendants' attorneys described as a "five-year nightmare" and vindicating what Mr. Ashton's attorney described as their belief in Mr. Ashton's innocence from the outset.

30.     Mr. Little has never been charged criminally.

**III.     Mr. Little's Pursuit of Coverage from XL**

31.     Barclays had advanced Mr. Little's legal expenses in connection with the Board of Governors' investigation prior to the commencement of the Enforcement Action.

32.     However, once the Enforcement Action was commenced, Barclays informed Mr. Little it would no longer reimburse his legal expenses and directed Mr. Little's counsel to XL for insurance coverage for those expenses.

33.     On June 4, 2018, XL's counsel responded that whether the applicable XL policy provided coverage would depend on Mr. Little's role at Barclays, and requested Mr. Little's role at Barclays at the time of the alleged acts.

34.     Mr. Little's counsel promptly responded on June 7 that Mr. Little's title had been Director – FX Spot Trading during his entire tenure at Barclays.  Additionally, Mr. Little's counsel requested a copy of the applicable XL policy or policies.

35.     On June 20, XL's counsel wrote a letter to Mr. Little's counsel in which he stated that XL disagreed with the position that Mr. Little qualifies as an "Insured" under the applicable XL policy.

36.     The June 20 letter stated "It is only in unusual circumstances that an individual other than a director or officer is an Insured under the Policy.  Your client was never a director or officer and none of the other circumstances is relevant in respect of your client on this occasion."

37.     The June 20 letter further stated that because the applicable policy is a confidential and commercially sensitive document, and XL had concluded "there is no prospect of [Mr. Little] receiving an indemnity," XL would not request permission from Barclays to disclose a copy of the policy to Mr. Little.

38. On June 21, Mr. Little's counsel requested a copy of the policy from Barclays. Over the course of the next several weeks, Barclays' counsel indicated it was discussing the request with XL, and on July 27, Barclays shared excerpts of the policy to Mr. Little's counsel "to be helpful to you in your discussions with XL."

39. The excerpts provided by counsel for Barclays contained two of seven listed subsections of the definition of "**Insured**," but did not contain the policy number, limits of liability, retention/deductible, or the policy's insuring agreement or the definitions of many of the pertinent terms used therein. The excerpts also did not identify which policy period XL or Barclays considered applicable.

40. The excerpts did clearly demonstrate that Mr. Little qualifies as an "**Insured**" under the policy as an employee who was alleged to have acted in a managerial or supervisory capacity at Barclays, so Mr. Little's counsel wrote to XL's counsel on August 8 presenting that position and again requesting a copy of the policy.

41. Despite multiple follow-up communications, XL's counsel did not substantively respond to this request, and Mr. Little engaged insurance coverage counsel to press the claim with XL.

42. On November 14, Mr. Little's coverage counsel wrote a letter to XL in which they reasserted the position that Mr. Little is an Insured under the policy based on the definitions he was provided and requested a copy of the policy.

43. XL's counsel responded that Mr. Little's coverage counsel could review the policy at Barclays' counsel's offices in New York.

44. When Mr. Little's coverage counsel arrived to review the policy, he was told that he would not be permitted to reproduce or even take notes on any provision in the policy. Mr.

Little's counsel objected to these conditions, and Barclays' counsel initially explained the restrictions were in place at XL's request, which Barclays was honoring. Barclays' counsel later added it was Barclays' position as well that the restrictions on the policy review were appropriate.

45. Having reviewed the policy under the conditions that it was made available, it is clear that Mr. Little is an Insured under the policy and that there are no other policy terms and conditions that would bar coverage for Mr. Little. Indeed, XL has cited no other policy terms or conditions in refusing to provide coverage to this point. Therefore, Mr. Little brings his claim to this Court that he is entitled to reimbursement of his significant defense costs, as well as for access to the policy under which he is making his claim, as he asserts his innocence in the Enforcement Action.

## **FIRST CAUSE OF ACTION**

(Breach of Contract)

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. The Policy sold by XL provides Mr. Little with insurance coverage for defense costs incurred by Mr. Little in connection with the wrongful acts alleged in the Enforcement Action.

48. Mr. Little constitutes an Insured under the terms of the policy, and therefore falls within the coverage of the policy.

49. Mr. Little is not aware of any policy provision that would bar coverage for his claim. Upon information and belief, Mr. Little has complied with all conditions under the policy to be entitled to coverage, including providing prompt notice of the Enforcement Action.

50. XL has failed or refused to honor its obligations under the policy to provide coverage in connection with the Enforcement Action.

51. As a direct, proximate, and legal result of XL's breach of contract, which is continuing as of the date of this Complaint, Mr. Little is entitled to damages in the amounts of loss compensable under the policy.

## SECOND CAUSE OF ACTION

(Breach of the Implied Covenant of Good Faith and Fair Dealing)

52. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Under New York law, the policy contains an implied covenant of good faith and fair dealing.

54. XL has refused to provide Mr. Little with a copy of the policy under which he is insured, placed unreasonable conditions on review of the policy by Mr. Little's counsel, and has maintained a baseless position for refusing to provide coverage to Mr. Little contradicted by what few provisions of the policy Mr. Little has been able to obtain while preventing Mr. Little from obtaining usable access to the remainder of the policy by which Mr. Little may more effectively press his claim for coverage.

55. Through these actions, XL has breached the implied covenant of good faith and fair dealing in the policy.

56. XL's conduct has violated the standards for good faith and fair dealing set forth in New York Insurance Law § 2601(a).

57. Mr. Little has been damaged by XL's breach of the implied covenant of good faith and fair dealing in an amount to be determined at trial.

58. Mr. Little is entitled to consequential damages flowing from XL's violation of the implied covenant of good faith and fair dealing, including, without limitation, prejudgment interest on the amount owed under the policy, and the attorneys' fees, costs, and disbursements incurred by Mr. Little in enforcing his rights and as a consequence of XL's bad faith delays in providing coverage for Mr. Little's claim.

59. Consequential damages were reasonably contemplated by XL and Barclays at the time that they entered into the policy.

## THIRD CAUSE OF ACTION

(Declaratory Relief)

60. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61. Pursuant to the terms of the Policy, XL is obligated to pay, up to the policy limit of liability, for defense costs incurred by an Insured in responding to a Claim.

62. Mr. Little is aware of no reason why his claim for coverage for defense costs associated with the Enforcement Action is not a covered claim.

63. XL disputes its legal obligation to pay Mr. Little's claim.

64. Pursuant to 28 U.S.C. § 2201, Mr. Little is entitled to a declaration by this Court of XL's obligations under the policy.

65. An actionable and justiciable controversy exists between Mr. Little and XL concerning the proper construction of the policy, and the rights and obligations of the parties thereto and Mr. Little, with respect to the claim for defense costs associated with the Enforcement Action.

66. Mr. Little is entitled to a declaration declaring that there is coverage available for his costs associated with the Enforcement Action under the policy, and, pursuant to 28 U.S.C. § 2202, any other relief this Court deems proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

(a) On the First Cause of Action, Plaintiff requests that the Court enter judgment against XL, awarding Plaintiff damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(b) On the Second Cause of Action, Plaintiff requests that the Court enter a judgment against XL, awarding Plaintiff damages in an amount to be determined at trial, plus punitive damages, consequential damages, attorneys' fees, and pre- and post-judgment interest to the extent permitted by law;

(c) On the Third Cause of Action, Plaintiff requests that this Court enter a declaratory judgment in favor of Plaintiff against XL, declaring that XL is obligated to pay Plaintiff, up to the applicable limits of the policy, for the claim for coverage for the Enforcement Action; and

(d) Additionally, Plaintiff requests such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York  
       December 18, 2018

MCKOOL SMITH, P.C.

/s/ Kenneth H. Frenchman  
Kenneth H. Frenchman  
Alexander M. Sugzda  
One Bryant Park, 47th Floor  
New York, New York 10036  
Tel: (212) 402-9400  
kfrenchman@mckoolsmith.com  
asugzda@mckoolsmith.com

*Attorneys for Plaintiff Peter Little*