UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
PETER LITTLE,

               Plaintiff,

v.

XL INSURANCE COMPANY SE,

               Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 11919 (VB)

Briccetti, J.:

Plaintiff Peter Little brings this action against defendant XL Insurance Company SE, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiff also seeks declaratory relief with respect to the agreement at issue.

Now pending is defendant's motion to dismiss the complaint for lack of personal jurisdiction and on grounds of forum non conveniens; or, in the alternative, to stay the litigation and compel arbitration. (Doc. #13).

For the following reasons, the motion to dismiss is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.     The Insurance Policy

Barclays Plc ("Barclays") is a British multinational investment bank and financial services company headquartered in London. In 2012, Barclays, through its insurance broker, Marsh Limited, contracted with defendant, then operating under the name XL Insurance Company Limited, to purchase directors and officers liability insurance. As a result, defendant

1

issued to Barclays Directors & Officers Liability and Company Reimbursement Insurance Policy Number B0509QA076812, for the period November 1, 2012, through November 1, 2013 (the "insurance policy"). The insurance policy was negotiated and underwritten in England.

Defendant was organized under the laws of England and Wales when it issued the insurance policy. It was a U.K.-registered company until January 2019, after which it changed its domicile to Ireland. Defendant's current registered address is in Dublin, Ireland.

II. The Enforcement Action

From April 2010 to February 2013, plaintiff was employed in Barclays's New York office as Director of FX Spot Trading. On February 16, 2018, the Board of Governors of the Federal Reserve System (the "Board of Governors") commenced an enforcement action against plaintiff for conduct that occurred at the time plaintiff was employed by Barclays. Specifically, the enforcement action alleges plaintiff participated in electronic chat rooms with foreign exchange traders at other banks to coordinate trades to influence, and manipulate, benchmark currency rates. The Board of Governors contends plaintiff breached his fiduciary duties on account of these trading improprieties.

Through the enforcement action, the Board of Governors seeks to permanently ban plaintiff from working in the banking industry, as well as a $487,500 civil penalty.

To date, plaintiff's legal fees in connection with the enforcement action surpass $1 million. He expects this number to exceed $5 million when all is said and done.

III. Plaintiff's Pursuit of Insurance Coverage

Pursuant to the insurance policy, plaintiff sought coverage from defendant to pay his legal costs to defend the enforcement action. Defendant concluded plaintiff did not meet the insurance policy's definition of "Insured" and was not eligible for directors and officers

insurance coverage. Plaintiff disagreed and demanded a copy of the policy. Defendant refused, citing an agreement with Barclays not to disclose the policy without the latter's consent.

Plaintiff then requested a copy of the policy from Barclays. Barclays did not provide a copy of the policy to plaintiff but allowed plaintiff's counsel to review a copy of the policy at Barclays's counsel's offices in New York.

Thereafter, plaintiff commenced the instant action.

IV. <u>High Court of Justice Anti-Suit Proceeding</u>

Shortly after plaintiff filed his complaint, defendant petitioned the English High Court of Justice for an anti-suit injunction to enjoin plaintiff from continuing to prosecute the instant matter, and to require plaintiff to resolve his claim pursuant to the insurance policy's dispute resolution provision. On February 11, 2019, the High Court issued an Interim Order in defendant's favor. Plaintiff was personally served at his residence with the interim anti-suit injunction and supporting documentation.

On May 3, 2019, following a hearing on notice, the High Court issued a Final Order enjoining plaintiff from prosecuting the instant case and requiring him to challenge defendant's denial of coverage in accordance with the terms of the dispute resolution provision of the insurance policy.

**DISCUSSION**

I.   Standard of Review[1]

Under the doctrine of forum non conveniens, "a federal district court may dismiss an action on the ground that a [forum] abroad is the more appropriate and convenient forum for adjudicating the controversy." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 425 (2007).[2] On a motion to dismiss for forum non conveniens that is decided without a factual hearing, the Court must accept as true the facts alleged in the complaint, but may also consider certain evidence outside the pleadings, including affidavits. Aguas Lenders Recovery Grp. LLC v. Suez, S.A., 585 F.3d 696, 697 n.1 (2d Cir. 2009).

When evaluating a motion to dismiss for forum non conveniens, the Court must first determine "whether the plaintiff's choice of forum is entitled to more or less deference." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d. Cir. 2003). Second, regardless of the level of deference owed, the Court must determine "whether the alternative forum proposed by the defendant[] is adequate to adjudicate the parties' dispute." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d 146, 153 (2d Cir. 2005). And third, the Court must balance the "private and public interests implicated in the choice of forum." Id.

---

[1]   The Court does not reach defendant's argument respecting personal jurisdiction. "[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (internal quotation omitted) (holding courts can decide forum non conveniens before subject matter jurisdiction); see also Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC), 563 B.R. 756, 766 (Bankr. S.D.N.Y. 2016) (addressing motion to compel arbitration before motions to dismiss for lack of subject matter or personal jurisdiction). Indeed, "[a] district court therefore may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. at 432.

[2]   Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

If the Court "can readily determine that it lacks jurisdiction over . . . the defendant, the proper course would be to dismiss on that ground. . . . But where . . . personal jurisdiction is difficult to determine, and forum non conveniens considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. at 436.

Lastly, "[t]he decision to dismiss a case on forum non conveniens grounds lies wholly within the broad discretion of the district court." Iragorri v. United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (en banc).

II. Application

    A. Deference to Plaintiff's Choice of Forum

        1. Plaintiff's Choice of Home Forum

Plaintiff contends the Court should afford significant deference to his choice of forum because he is at home in the forum. Defendant argues plaintiff's choice warrants no deference, as the insurance policy designates the forum in which disputes regarding same must be resolved.

The Court disagrees with both parties, but nevertheless concludes plaintiff's choice of forum is not entitled to significant deference.

As a general matter, there is "a strong presumption in favor of the plaintiff's choice of forum." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d at 154 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981)). "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." Piper Aircraft Co. v. Reyno, 454 U.S. at 255–56. "[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the

5

conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for <u>forum</u> <u>non</u> <u>conveniens</u>." <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d at 72.

However, a plaintiff's choice of home forum is not entitled to "talismanic significance." <u>Overseas Media, Inc. v. Skvortsov</u>, 441 F. Supp. 2d 610, 616 (S.D.N.Y. 2006). The choice "may be overcome . . . when the private and public interest factors clearly point towards" adjudication elsewhere. <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. at 266. The deference due "varies with the circumstances." <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d at 71.

For the reasons set forth in this opinion, and the facts and circumstances of the dispute, the Court declines to afford significant deference to plaintiff's choice of forum simply because plaintiff is at home in the forum.

2. <u>Dispute Resolution Provision</u>

Defendant argues the express terms of the insurance policy undermine plaintiff's choice of forum. Specifically, defendant refers to Section 5.14 of the policy, styled "Governing Law and Dispute Resolution" (the "dispute resolution provision"), which states in pertinent part:

> The construction, validity and operation of this policy shall be determined <u>in accordance with English law</u> and in accordance with the English text as it appears in this policy.
>
> \* \* \*
>
> Except as expressly provided for elsewhere in this policy, <u>any dispute or difference</u> which may arise under or in connection with this policy, whether arising before or after its expiry, <u>shall be submitted</u> to one of the following dispute resolution procedures at the election of any of the parties to that dispute or difference:
>
> (i) non-binding mediation;
> (ii) binding arbitration under the then prevailing Rules of the London Court of International Arbitration (LCIA) except insofar they shall be inconsistent with any provision within the General Provision 5.14, in which case the provisions set out herein shall apply. <u>The seat of arbitration shall be London, England</u>. The tribunal shall consist of three arbitrators and shall be constituted as follows:

6

* * *

> Should a dispute or difference initially be submitted for resolution by way of procedure (i):
>
> (a) the costs of the mediation shall be borne by the insurer; and
> (b) any party to that dispute or difference may, not less than thirty (30) days after the mediation has ended and provided that no binding settlement has been achieved, refer the matter to binding arbitration under procedure (ii).
>
> As regards procedure (ii) and whether it is adopted initially or following procedure (i):
>
> (1) the costs of the arbitrators and the fee to the LCIA will be borne by the insurer;
> (2) in the event that disputes arise between the insurer and an insured on several related matters, and/or between the insurer and several insureds on related matters, then these disputes shall be heard together and by the same arbitrators.

(Doc. #13-2 at ECF 55–56) (emphasis added).

Plaintiff contends the dispute resolution provision should not factor into the Court's assessment of his choice of forum because he is not a signatory to the insurance policy, and the dispute involves issues not within the scope of the provision.

The Court concludes the dispute resolution provision undermines plaintiff's choice of forum.

It is well settled that a non-signatory to an agreement containing a forum selection clause cannot seek to exploit certain provisions of the agreement and, at the same time, avoid others. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. AM. Boat Co., 2012 WL 527209, at *5 (S.D.N.Y. Feb. 17, 2012).

Here, plaintiff attempts just that. On the one hand, the relief plaintiff seeks—indemnification and payment of his legal expenses in connection with the enforcement action—are benefits hinging on whether plaintiff and his conduct are covered under the insurance policy.

In other words, plaintiff argues the express terms and definitions of the policy entitle him to coverage. Yet, on the other hand, plaintiff argues he is exempt from the policy's dispute resolution provision. Under these circumstances, the dispute resolution provision merits consideration.

The broad provision unambiguously selects England as the forum in which "any dispute or difference which may arise under or in connection with this policy" will be resolved. (Doc. #13-2 at ECF 55–56). The instant dispute concerns the validity, and the parties' interpretations of, the policy, and whether the policy obligates defendant to provide coverage to plaintiff. As such, the instant dispute falls within the contours of the dispute resolution provision.

For the reasons set forth above, plaintiff's choice of forum does not warrant significant deference under the facts and circumstances of this dispute.

B. <u>Availability of an Adequate Alternative Forum</u>

Defendant next contends an adequate alternative forum is available.

The Court agrees.

Under the second prong of the <u>forum non conveniens</u> standard, "[a]n alternative forum is adequate if the [defendant is] amenable to service of process there, and if it permits litigation of the subject matter of the dispute." <u>Pollux Holding Ltd. v. Chase Manhattan Bank</u>, 329 F.3d at 75 (citing <u>Piper Aircraft v. Reyno</u>, 454 U.S. at 254 n.22).

Here, the dispute resolution provision prescribes an adequate alternative forum for the disposition of the dispute: alternative dispute resolution in England. Defendant, a party to the insurance policy, agreed to the provision, and thus can be compelled to comply with it.

Plaintiff argues the alternative forum is inadequate because he cannot pursue in the alternative forum his claim for breach of the implied covenant of good faith and fair dealing.

8

This argument is misplaced, because "the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum, nor identical remedies." Norex Petroleum Ltd. v. Access Indus., Inc., 416 F.3d at 158; see also Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1360 (2d Cir. 1993) ("It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement.").

Moreover, the insurance policy expressly states that its construction, validity, and operation "shall be determined in accordance with English law," not New York substantive law. (Doc. #13-2 at ECF 55). For these reasons, plaintiff's argument is not persuasive.

As an additional matter, plaintiff suggests defendant cannot now seek to enforce the dispute resolution provision because defendant refused to provide plaintiff a copy of the insurance policy before plaintiff commenced the case. However, plaintiff's counsel reviewed the insurance policy in full at Barclays's counsel's offices prior to filing the complaint. Nevertheless, some lack of knowledge does not alter the provisions of the policy, some of which plaintiff seeks to enforce to his benefit.

For these reasons, defendant has demonstrated the availability of an adequate alternative forum for the instant dispute.

C. Balance of Public and Private Interests

Finally, the Court must "balance a series of factors involving the private interests of the parties in maintaining the litigation in the competing fora and any public interests at stake." Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 100 (2d Cir. 2000). Like the first two steps of the forum non conveniens test, the Court's analysis under this prong is case-specific. Osuna v. Citigroup Inc., 2018 WL 6547205, at *8 (S.D.N.Y. Sept. 28, 2018). The defendant bears the

burden to establish clearly each factor, and that the balance tilts strongly in favor of the alternative forum. PT Unified Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 74 (2d Cir. 1998).

For the reasons set forth below, and despite any deference afforded plaintiff's choice of forum, the balance of private and public interests strongly favors England as the proper forum for this dispute.

    1.    Private Interest Factors

The Court has considered the following private interest factors to determine whether dismissal on forum non conveniens grounds is appropriate: "(1) the ease of access to evidence; (2) the availability of compulsory process; (3) the costs for cooperative witnesses to attend trial; (4) the enforceability of a judgment; and (5) all other practical matters that might shorten any trial or make it less expensive." Holzman v. Guoqiang Xin, 2015 WL 5544357, at *8 (S.D.N.Y. Sept. 18, 2015) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Here, the private interest factors support dismissal. First, the situs of the insurance policy's negotiations, formation, and, in large part, its performance, is England. Brokers, underwriters, and executives who oversaw negotiations, drafting, and performance, are in England. The location of witnesses and evidence favors the alternative forum, even though plaintiff, and perhaps some evidence respecting his employment, are located in the New York.

To that end, the costs for cooperating witnesses to attend trial in the instant forum outweigh the costs of alternative dispute resolution in England, even though defendant may very well be better-situated to bear the expenses of the legal dispute. This conclusion finds strong support in the oft-cited "twin goals" of alternative dispute resolution: efficiency and the

avoidance of litigation costs.  Landmark Ventures, Inc. v. InSightec, Ltd., 63 F. Supp. 3d 343, 351 (S.D.N.Y. 2014).

Moreover, should plaintiff succeed on his claims, he may seek confirmation of an arbitral award against defendant in the United States.  Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd., 801 F. Supp. 2d 211, 222 (S.D.N.Y. 2011) ("The New York Convention provides that a party to an international arbitration may apply for an order to confirm the award against another party to the arbitration." (citing 9 U.S.C. § 207)).

Finally, "practical matters that might shorten" the dispute and "make it less expensive" in the alternative forum weigh strongly in favor of dismissal for the reasons set forth above.  See Holzman v. Guoqiang Xin, 2015 WL 5544357, at *8.

        2.        Public Interest Factors

As for the public interest factors, the Court must consider "court congestion, interest of forums in deciding local disputes, and interest in issues of foreign law being decided by foreign tribunals."  PT Unified Can Co. v. Crown Cork & Seal Co., 138 F.3d at 74.

These considerations also favor dismissal on forum non conveniens grounds.  The need for a United States court to apply foreign law is a factor that weighs in favor of dismissal.  Bybee v. Oper der Standt Bonn, 899 F. Supp. 1217, 1223 (S.D.N.Y. 1995).  There is no question the alternative forum, as prescribed by the dispute resolution provision, is better equipped to handle matters concerning English law, which governs the insurance policy.  Although this Court is not incapable of applying English law when necessary, it could not do so as knowledgably or as efficiently as an English arbitral tribunal.  Further, the alternative forum has a heightened interest in deciding a dispute involving the policy at issue.

11

By contrast, and aside from nominal evidence or witnesses, the action's lone connection to the instant forum appears to be plaintiff. He was employed in the New York office of an British investment bank. Whether plaintiff is entitled to coverage under the policy is a personal, fact-specific inquiry. Indeed, plaintiff's claims against defendant have little, if any, significance to the public in the instant forum.

Finally, cost considerations weigh strongly in favor of the alternative forum. Should plaintiff's claims proceed in a manner prescribed by the dispute resolution provision, costs of mediation or arbitration will be borne by defendant. Moreover, although dispute resolution inevitably will entail some cost for each party, the community of the instant forum, at large, would be best served by private resolution in England of the instant dispute, as opposed to continued proceedings in New York.

For these reasons, the alternative forum has a far greater interest in this matter than does the instant forum.

## CONCLUSION

The motion to dismiss on grounds of <u>forum non conveniens</u> is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #13) and close this case.

Dated: November 18, 2019
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge